I think you are right back with us. You do not need to repeat what you have said because these two cases are very similar, but you can certainly expand on it. So we will now hear, and counsel you are excused. So now we are hearing 19-6111 U.S. v. Maytubby. May it please the court, my name is Susan Otto, I am with the Federal Public Defender Office and I am representing the appellant Michael Maytubby. This is a first step case as well, and I have sort of blended the two cases when I was thinking about presenting argument, because this case to me illustrates why a rehearing on the merits, a full review on the merits has to include all aspects of sentencing. Mr. Maytubby, unlike Mr. Manny, has a guideline range that does not change. It does not change because Mr. Maytubby received two adjustments to his sentence from Judge Miles LaGrange as a result of the intervening ameliorative guideline amendments. And on each instance, Judge Miles LaGrange sentenced Mr. Maytubby to the low end of the newly revised guideline range. Did the judge have Mr. Maytubby come in and have a right of allocution on those two adjustments? She did not because, of course, under Dillon, the only thing she could do, the best she could do for him, was reduce it to the bottom end of the guideline range. And that's really the difference between those ameliorative amendments and what Congress was intending to do in the First Step Act of 2018. Congress was intending to reach those men, and the few women, who were deprived of the benefit of the Fair Sentencing Act of 2010. The statute changed, but it was not made retroactive. So the best you could hope for was a bottom end of the guideline sentence, and that's what Mr. Maytubby received. But when you apply the statutory revision to Mr. Maytubby, he too is eligible for a reduction in his sentence. If the only issue is his eligibility, I don't see how you have a complaint, because the court did consider his eligibility and then evaluated it and decided whether it was appropriate. So he got his eligible consideration. Yes, he did. Basically, the court spotted me, the eligibility issue, and said, I'll give you that one, but I'm still not inclined to reduce the sentence. And the judge cited two district court cases, one from the Eastern District of Washington and one from the Northern District of Ohio, United States v. Mason and United States v. Stone. Now, the Stone case was rather factually similar to Mr. Maytubby. There's no change in those guidelines. But the defendant argued a prende and a lien was a battle about eligibility in that case. And the district court correctly found that intervening Supreme Court decisions made all the difference. The Fair Sentencing Act of 2018 does not allow courts to apply unconstitutional guidelines or unconstitutional rules. And in Stone, the court, having considered eligibility, having considered the revision to Mr. Stone's statutory punishment, reduced his sentence to 360 months, which doesn't sound like a very generous thing, except Mr. Stone was serving life in prison. So the court applying the Fair Sentencing Act, the First Step Act of 2018, says 360 months. In Mason, and this kind of brings us back to what we were discussing in Mr. Manny's case, the district court said, no, I'm not going to revisit unrelated sentencing determinations. For example, we're not going to go back and look at career offender. I'm not going to reach other issues. We're just talking about the straight guideline computation. Interestingly, in that case, by applying that rule, the government was not allowed to advocate for abrogation of one of the downward adjustments. So the court applied that rule fairly. And the court in Mason, citing the ESP insider that indicated that you should consider the guidelines, policy statements, along with the other 3553A factors during resentencing, determined that 240 months was more than was necessary and resentenced the person to 175 months confinement. Now, I want to make sure I'm following you. I assume you're not repeating what you argued before regarding the necessity of a hearing. I mean, you're not adding anything to that argument. Is that correct? You're going to the reasonableness of the sentence? Well, we have two issues here, procedural and substantive reasonableness. Is there anything special about this case as compared to Mr. Manning that you wanted to emphasize with respect to the need for a hearing? Is that what you're addressing now? Well, no, Your Honor. What I'm addressing now is the fact that the district court cites Stone and Mason for the theory that you don't have to revisit. I'm sorry? You're addressing the reasonableness of the sentence now. Is that correct? Correct. But this was within the guideline range. Doesn't that put a burden on you to establish that it was unreasonable? Don't you have to overcome a presumption at this point, which makes it harder to attack the reasonableness of the sentence here than with respect to Mr. Manning? Reasonableness of the sentence has two factors to it. Okay. The factors that bear on this sentencing calculus at this point, and that's why I was perhaps harping a little bit on the reasoning in Mason. The sentencing guidelines don't change. The court is still permitted under the First Step Act of 2018 to determine what is sufficient and not greater than necessary. And in this case, the judge simply found the absence of a change in the guideline range as dispositive and said, Application of the First Step Act of 2018 doesn't change your sentencing guidelines. It certainly didn't. But that alone is not dispositive. If Congress would have intended that, they would have written the First Step Act of 2018 differently. There's a group of people who received the benefit of the ameliorative guidelines, and there's another group of people who didn't. But in both of those instances, even if you were Michael Maytebe and you received the benefit of reducing your guideline range incrementally through those successive guideline amendments, the judge who was deciding what to give you because of Dillon couldn't go any lower than the bottom of the guidelines. So what was new here that the court did not consider in declining to grant a variance? The statutory punishment had changed. Mr. Maytebe was eligible. And interestingly, Mr. Maytebe, arguably if he would have been in front of Judge Friant instead of Judge Russell, would have fit within that narrow group of people who might be eligible for some mercy. Because he was not a relentless recidivist. He was a first-time offender. Your complaint is that he based this on a generalization about there wasn't a change in the guideline. Correct. Was there any factual point regarding Mr. Maytebe personally that the judge declined to consider? Are you arguing that? The judge said that he reviewed Mr. Maytebe's motion, that he understood that Mr. Maytebe had done a great job in prison, but completely discounted the pepper factors and said, I'm not good enough. This is the problem. What more can he say? Well, probably not much unless you allow Mr. Maytebe to speak for himself. So now you're back to the procedural issue. Yes, we are back to it. To me, there is no distinction here between the procedural aspect of this and the substantive aspect. And the reason for that is because I have a fundamental difference with the government. I don't see this as a mere reduction or a mere motion to reduce. Congress said impose a reduced sentence. You are clearly in 3582. You are clearly conducting a resentencing. And in the absence of either a- Did Congress use the word resentencing? It says impose a reduced sentence. They do not use the word resentencing. Reduce. Let me ask you another question that I'm sure that there's a good answer. I just missed it. The defendant was sentenced on count one the same as counts two and six. The cocaine conversion would not affect the sentences on two and six. So why does he have even a standing concern here since he was sentenced concurrently to those two other counts and they would not be adjusted based on this cocaine conversion change? Because the court has the authority since all of the- everything is combined for sentencing. Because you are back in front of the court under the First Step Act, the sentencing package doctrine, and I didn't brief that because that wasn't raised, but the sentencing package doctrine, I believe, would have application. So he grouped one, two, and six together. And are you saying that that grouping would change under the guidelines if he reduced the sentence under count one? They're not technically grouped. What you do is you combine the different drugs and you convert them to- I know. I understand that. So if one, two, and six were not grouped together as a sentence, but rather were sentenced separately, but then sentenced to serve concurrently, unless he changes the concurrent statement, how is Mahtabi injured by whatever happens under count one since counts two and six are going to give him the same number of months anyhow? And we're dealing only with sentencing length, not convictions. I understand a person could say I've got a right not to have a conviction on my record for any count, even if it's a concurrent sentencing, but here he's not challenging conviction. He's only challenging sentencing time. And it seems like because he's going to get this unchanged sentence for two and six, how could he possibly be benefited by winning a reduction on count one? Because the sentencing package doctrine would dictate that because the drug amounts were combined and you're back in front of the court- But two and six don't talk about or don't address drug quantities. Those are not calculated. They do not. So it just seems to me like he's got a- if you were charging a conviction, that'd be a different thing. But I just don't see how he is going to get out of jail one day earlier in light of the convictions under two and six, which are not being challenged. Two and six cannot be challenged under the fair sentencing act of 2018. However, the man is back in front of the court for a resentencing and the judge can impose a reduced sentence. Under one, but he can only impose the reduced sentence under one, not two and six. So he reduces one, but voila, he's still in jail exactly the same length of time. I don't believe so, sir, because of the way the guidelines operate to combine all of the drugs together. Well, that's what- you haven't explained to me and I don't understand it. Why? Explain why two and six would change if he adjusted one. They would not necessarily change, but under the sentencing package doctrine, the court could reduce the entire sentence. But the statute does not authorize the court to readjust a sentence on anything other than one that is changed by the conversion factor. And courts don't have the ability to go back and say, gosh, you know, I think these other two counts were too high, too, and I'm going to reduce them as well. The court doesn't have jurisdiction to do that. The cocaine was driving the entire computation? No, if you look- but those other two counts are not sentenced on the basis of the conversion factor. And I doubt, I do not believe the court would have jurisdiction to change them. May I reserve my time? Judge Matheson, do you have a question? No. Let me ask the question. You've referred several times to the fact that the First Step Act uses the word impose a sentence. Yes, Your Honor. What alternative word would you suggest would have conveyed what the government says is the rule here? What other word could be used? I was trying to think of one and it didn't occur to me. Well, I suppose that if all Congress wanted to do was to say that for those people who had been deprived of the benefit of the reduced range or the reduced statutory range of punishment that a reduction could be- a motion to reduce could be considered and granted. I can't really imagine what- Well, you're distinguishing the First Step Act from other statutes because it uses the word impose. What language did those other statutes use? They use the word impose as well. I'm not distinguishing those statutes. Okay. Thank you. Mr. Ogilvie. Thank you, Your Honor. May it please the Court. Tim Ogilvie for the United States. I would like to bring up first just briefly in passing an answer to Judge Hartz's question about the use of the word impose and what that might mean. One of the cases I mentioned in the first argument before the Court this morning, that being the Williams case from the Eighth Circuit, directly addressed that and found that the term impose does not make this into a new or plenary sentencing. It's not a form of magic word and it's inconsistent with the discretionary description of the rest of the First Step Act. What was the case, that case, the site you're referring to? That was United States v. Williams, 943 Fed Third 841, a case from the Eighth Circuit in September. And just beyond that clarification, I don't have anything to add in addition to the remarks I made about the requirement for a hearing portion that was also before the Court earlier this morning in Manny. Mr. Ogilvie. Yes, Your Honor. Could I just ask for some clarification on the government's position in district court? Did the government contest whether Mr. Maytubby is eligible for reduction under the First Step Act in district court? We did, Your Honor. Okay, and what is the government's position now on eligibility? Well, as Your Honor knows, that that eligibility argument went in favor of the defendant. I would say that this was done very early on in First Step Act litigation when, in all candor, we were still ourselves trying to figure out what the limits of the First Step Act might be or what they should be. And I would say that our position has evolved somewhat, in part because all of the judges, at least in my district, have found that eligibility is really a categorical determination to be made if a person was convicted of a crack cocaine offense, regardless of their own personal conduct. And I think that was the distinction here, which we, as just a matter of practice, don't make anymore. So we did not cross-appeal the district court's determination that Mr. Maytubby was eligible, and the court found that he was. Okay, so just to be clear, you're not contesting eligibility at this point? Correct. That's correct, Your Honor. The one disagreement I would say that we have with the defendant's argument that's raised in this case that was not before the court in Manny is the defendant's characterization of the district court treating the unchanged guidelines as dispositive. And it is clear that the district court did not deny relief because it didn't think it could, only that was a factor that went into its calculus in deciding that it would not. And that, again, comes up in the context in the district court's order of its discussion about what it would or would not do in its discretion. For example, the district court used language such as, it will now consider whether to reduce a defendant's sentence. And it declines to lower the sentence, or not inclined to reduce, and ultimately concludes with a statement that it was the district court's judgment that the current sentence in place was the appropriate sentence under all the circumstances. So we disagree with the assertion by the defendant who says the district court was wrong because it viewed the guidelines as mandatory and a limit on its discretion. The court's discussion of that fact shows it clearly knew that it could still impose a reduced sentence and simply declined not to. And in case there was any doubt about that point, this exact argument was raised by the defendant in a motion to reconsider before the district court. And the district court clarified when it was essentially being asked, judge, are you sure you didn't view the guidelines as a limit on your discretion? And the district court answered in the negative. So it is clear that this, again, falls within the district court's discretion. The fact that the guidelines were unchanged did not thwart the district court's authority to act. It merely chose not to, and that's one of the options that is given to it under the First Step Act. I believe beyond that, unless there are questions from the panel, that will conclude my argument. Well, I'd like your comments on my concern about whether the defendant here would get any benefit if the defendant won this case, given that his sentence under Count 1, which is the only count that the court can reconsider, was created concurrently with Counts 2 and 6, and the only authority the court would have here would be to reduce Count 1, which would not affect Counts 2 and 6 in the exact same sentence, given that he's not challenging his conviction, but only the sentence. How could the defendant get any benefit by winning this case? I think the answer is the defendant could not for exactly the reasons that Your Honor raised in the court's question to defense counsel. There's not discretion to consider reduction of other counts not tied to the crack cocaine. So would that render any opinion we issue in this case advisory because no relief could be given? Your Honor, it very well may. And I have to confess, one disadvantage is that this argument was not brought to the district court below. It wasn't considered by the prevention officer. No, but it does affect our jurisdiction to enter an advisory. It's not a case of controversy if no real relief can be granted. And I do understand that, Your Honor, and the court's concern is very real. I offer that only to explain the fact that that is an issue that I haven't necessarily fully thought through. But the court would be correct that the First Step Act would not give discretion, even under the sentencing package doctrine, to counts other than those affected by the Fair Sentencing Act of 2010. Any other count I would suggest relief is unavailable on for exactly the reasons that Your Honor's question posited? Judge Matheson, do you have a question? I do have another question, Mr. Ogilvie. The disagreement between the government and the appellant in both cases on standard of review, I'm interested in your commenting on how sharp that disagreement really is. Because if we are to assess for abuse of discretion the denial of the sentencing reduction, is there any problem with our considering both procedural and substantive factors? And isn't that standard sentencing review, whether it's an initial sentence or a motion for reduction? Your Honor, to begin with the court's first question, I would say that there is very little difference between the government's view of what goes into what the standard of review should be and that offered by the defendant. Ultimately, we both agree that it's an abuse of discretion. Where we differ is if the procedural and substantive parts are viewed only in isolation. And for example, a district court might come up with a sentence that's completely reasonable, but if it violates a procedural rule, for example, didn't give a defendant a chance to allocute, didn't require a defendant to be present, I think we would all agree that that was a procedural error that could not be overcome. And so the difficulty, I would think, is not that we disagree on the concept of what all goes into an abuse of discretion, but our disagreement starts at whether or not the procedural and substantive components must be viewed separately and in isolation. Did the defendant in this case present a proffer of what the defendant would have said had a hearing been permitted? He did not, Your Honor. So I'm having trouble on the procedural question. Under this context, you would have us rule that there is no right to a defendant appearing. But if the court were to say, okay, you got a seat in the room, I'm going to reconsider whether I should reduce your sentence under the First Step Act, you know I would have, but I got all this prison report about how bad you were in prison. Gosh, I'm not going to let you come into court and have a hearing to explain that. It just doesn't feel like that would be giving the defendant procedural due process. Your Honor, what I would suggest is that I would urge the court not to hold a bright line rule that every defendant who asks for First Step Act relief automatically get a hearing, but it is possible that just under the abuse of discretion standard that we've suggested, the way that argument would be brought before this court is for a defendant to say, Judge, you failed to give us a full, complete review on the merits. Of the sole issue of drug quantity. See, that's my problem. Whether there's a resentencing or not. The only thing that's changed is the drug quantities. Correct. And if the court on resentencing says that's all I'm going to consider because that's the only change that happened, then the defendant's post-sentencing conduct would not be relevant. But we all seem to agree that the defendant's post-sentencing conduct could be relevant. So if the court considers post-sentencing conduct, but doesn't give the defendant the right to explain any of that post-sentencing conduct, either why it wasn't as bad as the court's concerned about, or maybe to explain that it was good. And that's exactly what the defendant here would like to explain. Are you saying that the defendant would have a due process right to be present for a hearing if the court makes a negative comment to the defendant about his post-sentencing conduct, but he would not have a right to a hearing to present positive conduct? Your Honor. That makes no sense either. Your Honor, I would say that the government's position is that no hearing is warranted. And in that respect, I would suggest to the court that this should be viewed just like the other sentencing modification procedures that are much more familiar to the court, those under more recent crack guideline amendments, where a hearing is not required even if a judge does consider whether positive or negative post-sentencing developments. So I would suggest this is not. Even under the due process clause, if the court says, I'm not going to reduce your sentence because you had a fight in prison, and the guy says, I'd like to make a proffer here that I had a fight only to defend myself or only to defend someone else, or it wasn't me. It was somebody else that was involved in that fight. It was a mistaken identity or something. The court says, no hearing. Are you suggesting that would be the proper rule? Or are you suggesting that we would write this to say that had there been a proffer of what the defendant wanted to say, it would be maybe he would have had a right to a hearing. And the concern I have with all of that is that the only thing that the First Step Act allows is a reduction in the conversion rate and doesn't seem to even refer to post-sentencing conduct. So I'm quite uncertain what kind of a rule you would like to have us write. Your Honor, I would suggest that the rule that's now squarely before the court is, does the defendant get a right? Does every First Step Act litigant get the right to a hearing? And I've suggested that the answer is no. Again, because it's a modification, not a sentencing in the first instance. And it may have been something of an oversimplification for me to say there was no proffer of what the defendant would have said. But we do know his position because that was advanced in the pleadings by defense counsel before the district court. So it wasn't called a proffer, but his position was stated in the pleadings. Correct. And why isn't he, and if you agree that it is legitimate for the court to have considered those arguments advanced in the pleadings, and the government disagrees with some of those, why wouldn't he have a right to explain and defend those statements to the court? It seems to me if you concede that the court can consider post-conviction conduct, I have a very hard time seeing how you can defend that the defendant would not have a right to appear in allocution to address those subjects. Your Honor, I would suggest that first of all, as happened here, the defendant had a full opportunity to present that to the district court. And it really comes down to whether or not, hearing or no, the defendant was afforded the district court's obligation to perform a full, complete review of the motion on the merits. Your time has expired. Thank you very much, Your Honors. Case is submitted. Counts are excused. Did you have any, I don't think you had any time left. Your Honor, she had a lot of seconds left. She did? Okay. Go for it. Yeah. I have an answer to your question. I don't believe this is a nullity for the simple reason that count two was the maintaining count, count six was the MDMA count. And I believe that you are correct that those 151-month sentences would stand. He's done 168. Your time has expired. Thank you. But I think I have a solution for you anyway. I was going to request that counsel submit supplemental briefing on the jurisdictional question. Thank you. Yeah. Good. So if you can do that. Yes, that would be fine. Thank you. Now, that's important. We don't want to do something beyond our jurisdiction, but nobody was prepared for Judge Ebel's insight here. So I think we should have supplemental briefing. I will look forward to your brief upon your representation. And your representation carries a lot of weight, Ms. Otto. I will look forward to your brief on why this would make a difference. So we'll read your response. So we'll come up with how we want to do it, how much time, and whether it's simultaneous or whatever when we conference. But we'll let you know. Thank you very much. Thank you. Is that okay? Yeah, that's fine. Yeah.  That's why. Yeah. Because the defendant . . .